UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BREAKING THE CHAIN FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAPITOL EDUCATIONAL SUPPORT, INC., <br><br> Defendant. | Civil Action No. 08-356 (CKK) |

**MEMORANDUM OPINION**
(December 15, 2008)

Plaintiff Breaking the Chain Foundation, Inc. ("BCF") filed a Complaint in this case against Defendant Capitol Educational Support, Inc. ("CES") on February 28, 2008 alleging violations of Plaintiff's federal and common law trademark rights. *See* Compl., Docket No. [1]. Although properly and timely served with the Complaint and Summons, Defendant failed to respond to the Complaint, and the Clerk of the Court, upon motion by Plaintiff, entered default against Defendant on August 11, 2008. *See* Clerk's Entry of Default as to CES, Docket No. [14]. Presently before the Court is Plaintiff's [16] Motion for Default Judgment. Having thoroughly considered Plaintiff's submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall GRANT IN PART, HOLD IN ABEYANCE IN PART, and DENY WITHOUT PREJUDICE IN PART Plaintiff's [16] Motion for Default Judgment. Specifically, the Court grants Plaintiff's Motion as to liability and its request for injunctive relief, holds in abeyance Plaintiff's Motion as to its request for monetary damages, and denies without prejudice Plaintiff's Motion as to its request that

Defendant be ordered to deliver to Plaintiff for destruction materials in Defendant's control and possession bearing Plaintiff's trademark, for the reasons stated below.

## I. BACKGROUND

Plaintiff filed a Complaint in the above-captioned case on February 28, 2008, alleging: (1) federal trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) federal unfair competition, false designation of origin, and trade name infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) violation of the Anticybersquatting Consumer Protection Act ("ACPA"), § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); (4) trademark infringement in violation of the common law of the District of Columbia; and (5) unfair competition in violation of the common law of the District of Columbia. Compl. ¶¶ 26-53.

Plaintiff is a District of Columbia non-profit corporation whose mission is to eradicate inter-generational incarceration in the Washington, D.C. area and provide support services to children of incarcerated persons. Compl. ¶¶ 1, 6-7. As is relevant to the instant case, Plaintiff owns federal trademark registration number 3,375,836 for the design mark "BREAKING THE CHAIN FOUNDATION,"[1] and, at the time of the Complaint, had a pending application for the word mark "BREAKING THE CHAIN FOUNDATION."[2] *Id.* ¶ 14. Plaintiff provides a wide variety of community services throughout the D.C. area under the trademark "BREAKING THE

---

[1] The word "FOUNDATION" is disclaimed from Plaintiff's registration for the mark "BREAKING THE CHAIN." Pl.'s Mot. for Default J. at 4 n.1.

[2] The United States Patent and Trademark Office issued a notice of publication in Application Serial No. 77/219,233 for the word mark "BREAKING THE CHAIN FOUNDATION" on July 16, 2008. Pl.'s Mot. for Default J. at 4 n. 2.

CHAIN," including a mentoring program, tutoring program, financial sponsorship program, social service referral program, as well as charitable fund-raising for children of incarcerated parents. *Id.* ¶¶ 8-9.

According to the Complaint, Defendant is a non-profit corporation in the District of Columbia that also provides educational and support services to children of incarcerated persons and students enrolled in underperforming public schools. *Id.* ¶ 2. Plaintiff alleges that Defendant, without authority or permission, used Plaintiff's trademark in connection with the provision of services similar or identical to those provided by Plaintiff. *Id.* ¶ 16. Specifically, Plaintiff alleges that Defendant impermissibly used the trademark "BREAKING THE CHAIN" to raise funds for children of incarcerated parents and in connection with Defendant's mentoring program for children of incarcerated parents. *Id.* ¶¶ 17-19.

Defendant was served with the Complaint and Summons on June 23, 2008, and was therefore required to respond by July 14, 2008. *See* Return of Service/Affidavit, Docket No. [10]; *see also* Pl.'s Mot. for Default J., Docket No. [16], at 2. Defendant failed to file an answer or otherwise respond to Plaintiff's Complaint, and Plaintiff subsequently moved for entry of default as to Defendant. *See* Pl.'s Aff. for Entry of Default, Docket No. [13]. On August 11, 2008, the Clerk of the Court entered default against Defendant. *See* Clerk's Entry of Default as to CES, Docket No. [14]. Plaintiff now moves for entry of default judgment. *See* Pl.'s Mot. for Default J.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). After a default has been entered by the clerk of the court, a court may enter a default judgment pursuant to Rule 55(b). FED. R. CIV. P. 55(b). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters and Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,* 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters and Allied Trades Indus. Pension Fund v. R.W. Armine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (internal citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* (citing *Adins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

### III. DISCUSSION

*A. Liability*

Where, as here, there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Auxier Drywall, LLC,* 531 F. Supp. 2d at 57 (internal quotation marks omitted). The Clerk of the Court entered Defendant's default, and the factual allegations in the Complaint are therefore taken as true. *See R.W. Armine Drywall Co., Inc.*, 239

F. Supp. 2d at 30.  The Court finds that Plaintiff's Complaint sufficiently alleges facts to support Plaintiff's claims.  The Court notes that, although Plaintiff's Complaint asserts five separate counts, Plaintiff's claims may be generally grouped into two categories for purposes of determining liability.

First, Counts I, II, IV, and V of the Complaint allege, in respective order: (a) federal trademark infringement pursuant to § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Compl. ¶¶ 26-30; (b) unfair competition, false designation of origin and trade name infringement pursuant to § 43(a) 15 U.S.C. § 1125(a), *id.* ¶¶ 31-37; (c) common law trademark infringement, *id.* ¶¶ 45-50; and (d) common law unfair competition, *id.* ¶¶ 51-53.  Claims under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) are measured by the same standards under the Lanham Act, although the former section requires registration of the mark at issue, while the latter does not.  *See Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006); *see also A&H Sportwear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  Plaintiff's claims for common law trademark infringement and unfair competition are evaluated under the same standards as well.  *See Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356, 361 (D.C. 2006); *see also Globalaw Ltd.,* 452 F. Supp. 2d at 26-27.  Accordingly, Plaintiff's claims set forth in Counts I, II, IV, and V may be evaluated together for purposes of liability.

To prevail on these claims, "the plaintiff must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark."  *Globalaw Ltd.*, 452 F. Supp. 2d at 26-27 (internal quotation marks omitted).  Moreover, as to the claim for trademark infringement under 15 U.S.C. § 1114(1), Plaintiff must have a

registered trademark.  *Id.*  By default, Defendant admits that Plaintiff has a valid (and registered) trademark that has a distinctive and/or secondary meaning and that there is a substantial likelihood of confusion.  *See* Compl. ¶¶ 10-15, 23, 26-36, 45-53.

Second, to state a cybersquatting claim under the ACPA, a plaintiff must allege that: (1) its trademark is a distinctive or famous mark entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) that defendant registered its domain name with the bad faith intent to profit from it.  15 U.S.C. § 1125(d)(1)(A); *see also Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 15 (D.D.C. 2007) (citing *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001)).  By default, Defendant admits that Plaintiff has a trademark that is distinctive and/or famous and that is entitled to protection, that Defendant's domain name is identical or confusingly similar to Plaintiff's trademark, and that Defendant registered its domain name with the bad faith intent to profit from it.  *See* Compl. ¶¶ 10-15, 23, 38-44. Accordingly, the Court determines that Plaintiff is entitled to default judgment as to liability on its claims.

### B. Appropriate Relief

Plaintiff requests relief in the form of injunctive relief, monetary damages, and other equitable relief.  *See* Pl.'s Mot. for Default J. at 7-10; *see also* Compl., Prayer for Relief, ¶¶ 1-7. The Court shall consider each in turn.

#### 1. Injunction

Plaintiff requests the Court permanently enjoin Defendant from using the mark "BREAKING THE CHAIN" in the future.  Pl.'s Mot. for Default J. at 6; Compl., Prayer for Relief, ¶ 2.  A district court has authority under the Lanham Act to grant injunctive relief

"according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further violations of Plaintiff's trademark rights.  15 U.S.C. § 1116.  "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction."  *American Civil Liberties Union v. Mineta*, 319 F. Supp.2d 69, 87 (D.D.C. 2004).  First, as discussed above, Plaintiff has succeeded, by default, on the merits of the instant action.  *See supra* 4-6.  Second, it is generally recognized that "'[t]rademark infringement by its very nature causes irreparable injury.'"  *Health Ins., Ass'n of America v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) (quoting *Hart v. Sampley*, Civ. No. A.91-3068, 1992 WL 100135 at *3 (D.D.C. Feb. 4, 1992)).  Moreover, as shown by Plaintiff in its Motion for Default Judgment and attachments, Defendant has refused to provide any assurances that it will cease its violations of Plaintiff's trademark rights, despite Plaintiff's repeated efforts to resolve the matter informally with Defendant.  *See* Pl.'s Mot. for Default J. at 2-3, 6-7.  The Court therefore agrees that Defendant's continuing disregard for Plaintiff's rights demonstrates that it will continue to infringe on Plaintiff's rights, absent an injunction.  This finding further justifies granting Plaintiff's request for a permanent injunction.  *Cf. Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990) (ordering a permanent injunction for copyright infringement) ("When a [] plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction.") (citing *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir. 1981)).  The Court also finds that an injunction would not harm others, and that public interest favors

protecting against further violation of federal trademark laws.  Entry of a permanent injunction enjoining Defendant from further violating Plaintiff's trademark rights it therefore appropriate.

Pursuant to 15 U.S.C. § 1116(a), Plaintiff also requests that any such injunction include a requirement that Defendant file with the Court, and serve upon Plaintiff, within 30 days after entry and service on Defendant of the injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of the injunction. Pl.'s Mot. for Default J. at 19; Compl., Prayer for Relief, ¶ 6.  The decision to require Defendant to report on its compliance with the terms of an injunction issued pursuant to 15 U.S.C. § 1116 is left to the discretion of the Court.  *See* 15 U.S.C. § 1116(a) ("Any such injunction *may* include" such a provision. . . .") (emphasis added).  Given Defendant's repeated failure to respond to Plaintiff's communications, including a cease and desist letter, regarding Defendant's use of Plaintiff's trademarks, *see* Pl.'s Mot. for Default J. 2-3, the Court agrees that an order requiring Defendant to report on its compliance with the injunction issued herein is appropriate. Accordingly, the Court concludes that Plaintiff is entitled to a permanent injunction, as requested in its Motion for Default Judgment, and that, pursuant to 15 U.S.C. § 1116(a), such injunction shall "include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction . . . a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."

### 2. *Monetary Damages*

Plaintiff also requests the Court award it $17,650 in monetary damages or, in the alternative, an accounting from Defendant disclosing the profits earned from use of Plaintiff's

trademark in Defendant's fund-raising efforts. Pl.'s Mot. for Default J. at 7-10; Compl., Prayer for Relief, ¶¶ 3-4. Under section 35 of the Lanham Act, a plaintiff may recover a defendant's profits arising from its unlawful act(s) of trademark infringement. 15 U.S.C. § 1117(a). "To recover a defendant's profits under the Lanham Act, the plaintiff must show the defendant acted 'willfully or in bad faith.'" *Riggs Inv. Mgmt. Corp. v. Columbia Partners, LLC*, 966 F. Supp. 1250, 1270 (D.D.C. 1997) (citing *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 641 (D.C. Cir. 1982)). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. 1117(a). The Court emphasizes, however, that when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *R.W. Armine Drywall Co., Inc.*, 239 F. Supp. 2d at 30.

     Plaintiff asserts that it is entitled to recover Defendant's profits generated from a fund-raising event, specifically the "Breaking The Chain Concert Series" held by Defendant. Pl.'s Mot. for Default J. at 8. As demonstrated by Plaintiff's Motion and its attachments, Defendant held one installment of its "Breaking The Chain Concert Series" on March 1, 2007 at the Lincoln Theatre in Washington, D.C. *Id.* Plaintiff has submitted a declaration by Ms. Joyce Johnson, an Administrative Assistant at Plaintiff's foundation, stating that she called the Lincoln Theatre on September 24, 2008 and spoke with the Theatre's General Manager. *Id.*, Ex. G (Johnson Decl.), ¶ 2. Ms. Johnson asked the General Manager how many tickets were sold to the "Breaking The Chain Concert Series" held on March 1, 2007 at the Lincoln Theatre, but the General Manager told her that "she did not have the number handy, but would get back to [Ms. Johnson] later in the day." *Id.* ¶¶ 3-4. According to Ms. Johnson, she called the General Manager again later that

same day, at which time she was told that, "according to the Lincoln Theatre records, 353 tickets were sold to the event." *Id.* ¶ 5. Ms. Johnson sent a follow-up email attempting to confirm the conversation, but did not receive any response to her email. *Id.* ¶ 6. As evidenced in a flier attached to Plaintiff's Motion, ticket prices for the event were advertised at $50 per ticket. *See* Pl.'s Mot. for Default J., Ex. F (flier/advertisement). Plaintiff therefore asserts that, "[m]ulitiplying $50 by 353 tickets, [Defendant] generated $17,650 from the concert," which amount represents Defendant's profits from using Plaintiff's trademark. Pl.'s Mot. for Default J. at 8-9.

Although Plaintiff is correct that it need only prove Defendant's sales, and that Defendant has the burden of demonstrating that any reductions are appropriate, the Court finds that Plaintiff has not sufficiently met its burden of proving Defendant's sales. In calculating Defendant's sales from the concert event in question, Plaintiff relies solely on a statement made to Plaintiff by a third-party (the General Manager of the concert venue). *See* Pl.'s Mot. for Default J. at 8-9. The Court, however, is persuaded that, "[u]nless there are very unusual circumstances to justify it, the evidentiary material offered in support of a final [default] judgment should consist of material within the personal knowledge of the affiant and not hearsay. . . ." *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2d Cir. 1970) (setting aside default judgment where it was based entirely upon hearsay evidence); *see also Nationwide Property & Cas. Ins. Co. v. Janis*, No. 1:08-cv-00153, 2008 WL 2762375, *2 (M.D. Pa. July 11, 2008). Plaintiff has not presented any "unusual circumstances" that would justify permitting reliance on the hearsay statement of a third-party in calculating monetary damages in this case. To the contrary, it is appears to the Court that, with a modicum of additional effort, Plaintiff should be able to obtain reliable, non-

hearsay evidence of the number of tickets sold to the concert event in question.  As made clear from Plaintiff's Motion, however, Plaintiff made only a single attempt to confirm the number of tickets sold by the concert venue and, having received no response, made no additional follow-up efforts.

Moreover, the Court is not persuaded that, by virtue of Defendant's default, Plaintiff is entitled to a "relaxed standard[] of proof."  Pl.s Mot. for Default J. at 8 n. 4 (citing *Taylor Made Golf Co., Inc. v. Carsen Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997).  The Court is particularly resistant to applying a relaxed standard of proof in this case because here, unlike in *Taylor Made Golf* and many other default judgment cases, Plaintiff has already demonstrated that the amount of Defendant's sales may be determined without requiring any discovery from the defaulting Defendant—*i.e.*, by obtaining the number of tickets sold directly from the concert venue.  The Court notes that it does not quarrel with Plaintiff's method of calculating Defendant's sales, only with its sole reliance on hearsay evidence as support for the number of tickets sold.  Accordingly, the Court shall hold in abeyance Plaintiff's Motion for Default Judgment as to its request for monetary damages to permit Plaintiff another opportunity to submit adequate evidence to the Court in support of its request.  Plaintiff shall therefore submit, no later than January 30, 2009, supplemental briefing sufficient to support its claim that Defendant's sales from the "Breaking The Chain Concert" installment held on March 1, 2007 total $17,650.[3]

---

[3] Plaintiff requested, in the alternative, that the Court order Defendant to disclose its profits from the March 1, 2007 event.  Pl.'s Mot. for Default J. at 9-10.  Given that it is Plaintiff's burden to demonstrate Defendant's sales, and that Plaintiff has already identified a method for calculating that amount that is not dependent upon discovery from Defendant, the Court is not convinced that such an order is appropriate at this time.  However, the Court will

*3. Other Equitable Relief*

Finally, Plaintiff requests additional equitable relief and moves the Court to order Defendant to deliver to Plaintiff for destruction all papers, signs, labels, prints, packages, advertising, or other promotional materials in Defendant's possession or control bearing the trademark "BREAKING THE CHAIN," in accordance with 15 U.S.C. § 1118. Pl.'s Mot. for Default J. at 19; Compl., Prayer for Relief, ¶ 5. The decision whether to order Defendant to "deliver[] up and destroy" all papers, signs, labels, prints, packages, advertising or other promotional materials bearing Plaintiff's trademark is committed to the Court's discretion. 15 U.S.C. § 1118 ("the court *may* order" that such material is delivered up and destroyed) (emphasis added); *see also Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 127 (5th Cir. 1966). Moreover, "[i]t has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary." *Kelley Blue Book v. Car-Smarts, Inc.,* 802 F. Supp. 278, 293 (C.D. Cal. 1992) (citing *Neva, Inc. v. Christian Duplications Int'l, Inc.,* 743 F. Supp. 1533, 1549 (M.D. Fla.1990)); *see also Bonanza Int't, Inc. v. Double "B,"* 331 F. Supp. 694, 697 (D. Minn. 1971) ("Section 1118 on its face permits the trial court to determine whether or not to order the delivery and destruction of the infringing items, and under the circumstances, since defendant has been enjoined from the use of the items bearing plaintiff's register marks, it is not believed that such delivery is necessary at this time."). The Court agrees that, "[i]n light of the injunction, discussed [above], to be entered

---

reconsider Plaintiff's request for an accounting, if appropriate, upon Plaintiff's submission of the supplemental briefing as described above.

by the Court in this matter, an order requiring the destruction of any infringing articles in the possession of the defendants is unnecessary." *Kelley Blue Book*, 802 F. Supp. at 293. Accordingly, the Court shall deny without prejudice Plaintiff's request to order the delivery to Plaintiff for destruction of materials in Defendant's possession bearing Plaintiff's trademark.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT IN PART, HOLD IN ABEYANCE IN PART, and DENY WITHOUT PREJUDICE IN PART Plaintiff's [16] Motion for Default Judgment.  Specifically, the Court grants Plaintiff's Motion as to liability and its request for injunctive relief, holds in abeyance Plaintiff's Motion as to its request for monetary damages, and denies without prejudice Plaintiff's Motion as to its request that Defendant be ordered to deliver to Plaintiff for destruction materials in Defendant's possession bearing Plaintiff's trademark.  Plaintiff is further required to file with the Court, no later than January 30, 2009, supplemental briefing sufficient to support its request for monetary damages.

Date: December 15, 2008

 _/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge